IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

FILED

Aug 18 2017

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) Civil Action No. 17-1115 C _____ |
| v. | ) ) |
| THE UNITED STATES OF AMERICA, | ) ) |
| Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS

DATED:    August 18, 2017

Richard J.R. Raleigh, Jr.  (Attorney of Record)
Jerome S. Gabig, Jr.
Christopher L. Lockwood
*Attorneys for Plaintiff*
**WILMER & LEE, P.A.**
100 Washington Street, Suite 200
Huntsville, Alabama 35801
Telephone:  (256) 533-0202
Facsimile:   (256) 533-0302
rraleigh@wilmerlee.com
jgabig@wilmerlee.com
clockwood@wilmerlee.com

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT...................................................1

II.   QUESTIONS PRESENTED..................................................2

IIII. STATEMENT OF THE CASE..............................................3

IV.   FACTUAL BACKGROUND.................................................7

V.    STANDARD OF REVIEW, AUTHORITY, AND RELIEF
      REQUESTED.................................................................9

      A.    Jurisdiction, Ripness, and Standing...........................9

      B.    Legal Standard Under the Administrative Procedure Act..............12

      C.    Legal Standard for Injunctive Relief.........................14

      D.    Authority and Argument........................................15

            1.    CliniComp Meets the Prejudice Requirement for Issuance of an
                  Injunction.................................................15

            2.    CliniComp is Highly Likely to Prevail on the Merits...........16

                  Count I:   Secretary Shulkin's Use of the Public Interest
                  Exception to CICA Lacks a Rational Basis................18

                  Count II:  The CICA Exception to Full And Open Competition
                  for Public Interest is Not Available Because the Urgency That
                  Is Compelling Secretary Shulkin to Award a Sole Source
                  Contract to Cerner Is a Consequence of the VA's Lack of
                  Advance Planning..........................................19

                  Count III:   The Sole Source Decision Cannot Withstand
                  Scrutiny Because the VA Has an Obligation Under 41 U.S.C. §
                  3304(d) to Solicit Offers From as Many Potential Sources as is
                  Practicable Under the Circumstances.   Under the Present

Circumstances, Not Only is CliniComp a Potential Source, but Also the Selection of Cerner Was Arbitrary, Capricious and an Abuse of Discretion Since CliniComp Already Has an EHR System That Meets the VA's Requirements and Cerner Does Not...................................................................20

Count IV:   By Proceeding as Planned With a Development Contract to Be Awarded to Cerner, the VA Is Violating 41 U.S.C. § 3307(b) Which Requires, to the Maximum Extent Practicable,   "Offerors   of   Commercial   Items   and Nondevelopmental Items … Are Provided an Opportunity to Compete   in   Any   Procurement   to   Fill   Those Requirements."....................................................22

Count V:  The VA Has Violated FAR § 10.002(b) by Failing to Conduct Market Research "to Determine if Commercial Items or   Noncommercial   Items   Are   Available   to   Meet   the Government's   Needs   or   Could   Be   Modified   to   Meet   the Government's Needs."..............................................23

Count VI:   Secretary Shulkin's Decision to Award a Sole Source Contract to Cerner Constituted a Source Selection Decision.   Secretary Shulkin's Source Selection Decision Failed to Consider Cost.   Not Only Does Secretary Shulkin's Failure to Consider Costs Violate a Fundamental Procurement Precept for Source Selection Decisions but Also Violated His Duty Under FAR § 1.102-2(c)(1) to Be "Responsible and Accountable for the Wise Use of Public Resources."...........25

Count VII:  The VA's Decision to Standardize on Cerner's EHR System Without First Holding a Competition Violates CICA.................................................................27

Count VIII:  Since The Next Generation VA EHR System is a Major System, the VA is Violating FAR § 34.005-1 by Not Pursuing Full and Open Competition Between Alternative Major Systems Sources Until it Is No Longer Economical or Practical to Do So.................................................28

Count IX:  The VA's Decision to Modernize the Existing EHR and/or Develop a New EHR Without Considering the Commercially Available Option of CliniComp's EHR Is Arbitrary, Capricious, an Abuse of Discretion, and Violates OMB Circular A-130.............................................29

3.  The Public Interest Favors CliniComp's Position...............31

4.  The Potential for Irreparable Harm to CliniComp is Immense...........................................................32

5.  The Harm to CliniComp Outweighs Any Harm to the Government or to Third Parties by Granting the Application........................................................32

E.  Preliminary and Permanent Injunctive Relief Requested.............33

VI.  CONCLUSION.................................................................33

## TABLE OF AUTHORITIES

**Cases**

*Akal Security, Inc. v. United States*,
    87 Fed. Cl. 311 (2009)……………………………………………..32

*Cherokee Nation Technologies, LLC v. United States*,
    116 Fed. Cl. 636 (2014)………………………………………….19

*CSX Transp. Inc. v. Alabama Dept. of Revenue*,
    562 U.S. 277 (2011)……………………………………………..21

*Eskridge  Research Corporation v. United States*,
    92 Fed. Cl. 88 (2010)…………………………………………….14

*Google, Inc. and Onix Networking Corp. v United States*,
    95 Fed. Cl. 661 (2011)…………………………………………...28

*IMS Services, Inc. v. United States*,
    33 Fed. Cl. 167  (1995)………………………………………….14

*Insight Systems Corp. v. United States*,
    110 Fed. Cl. 564 (2013)………………………………………….31

*Keco Industries, Inc. v. United States*,
    492 F.2d 1200 (Ct. Cl. 1974)……………………………………12

*Marsh v. Oregon Nat. Res. Council*,
    490 U.S. 360 (1989)……………………………………………..13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)………………………………………………13

*N.L.R.B. v. SW Gen., Inc.*,
    137 S. Ct. 929 (2017)……………………………………………21

*Overstreet Elec. Co., Inc. v. United States*,
    47 Fed. Cl. 728 (2000)…………………………………………..13

*Qingdal Taifa Group Co. v. United States,*
    581 F.3d 1375 (Fed. Cir. 2009)……………………………….…….16

*Savantage Financial Services v. United States,*
    123 Fed. Cl. 7 (2014)…………………………………………...9-11, 15

*Savantage Financial Services, Inc. v. United States,*
    81 Fed. Cl. 300 (2008)…………………………………………16-17

*Standard Havens Prods., Inc. v. Gencor Indus.,*
    897 F.2d 511 (Fed. Cir. 1990)……………………………………...15

*United Int'l Investigative Servs., Inc. v. United States,*
    41 Fed. Cl. 318 (1998)……………………………………………...13

*Watterson Construction Co. v. United States,*
    98 Fed. Cl. 84 (2011)……………………………………………….31

## GAO Decisions

*Electronic Design, Inc.,*
    B-279662 (Aug. 31, 1998)…………………………………………25

*Glotech, Inc.,*
    B-406761 (Aug. 21, 2012)…………………………………………25

*I.M. Systems Group,*
    B-404583 (Feb. 25, 2011)…………………………………………25

*RTF/TCI/EAI Joint Venture,*
    B-280422 (Dec. 29, 1998)…………………………………………25

*TeQcom, Inc.,*
    B-224664 (Dec. 22, 1986)…………………………………………24

**Statutes and Regulations**

5 U.S.C. § 706…………………………………………………………………….12

28 U.S.C. § 1491…………………………………………………………………...9

41 U.S.C. § 3304……………………………………………….... 6, 20-21

41 U.S.C. § 3307…………………………………………………………22-23

FAR § 1.102-2…………………………………………………………..7, 31

FAR § 2.101…………………………………………………………………28

FAR § 6.302-1……………………………………………………………….21

FAR § 6.305……………………………………………………………....5

FAR § 10.002………………………………………………………..6, 23-24

FAR §34.005-1……………………………………………………....28-29

OMB Circular A-109……………………………………………..29-30

## APPENDIX

1.    Exhibit 1, VA News Release, 6-5-17.

2.    Exhibit 2, CliniComp's Agency-Level Protest, 6-14-17.

3.    Exhibit 3, VA Letter Denying/Dismissing Protest, 8-7-17.

4.    Exhibit 4, Secretary Shulkin Press Conference Transcript, 6-5-17.

5.    Exhibit 5, *Feds' Rampant Use of No-Bid Contracts the Essence of Corruption.*

6.    Exhibit 6, *HealthcareIT News titled How Jared Hushner Helped the VA pick Cerner…Quickly.*

7.    Exhibit 7, OMB Circular No. A-130, *Managing Information as a Strategic Resource.*

8.    Exhibit 8, Testimony of VA Acting Under Secretary for Health to House VA Subcommittee, 6-22-17.

9.    Exhibit 9, Secretary Shulkin Determination and Findings, 6-1-17.

10.   Exhibit 10, Declaration of Chris Haudenschild.

11.   Exhibit 11, White House Press Briefing, 6-5-17.

COMES NOW Plaintiff CliniComp International, Inc. ("CliniComp"), by and through the undersigned counsel, and hereby files this Memorandum of Points and Authorities in Support of its Motion for Preliminary and Permanent Injunctions.

Pursuant to the U.S. Court of Federal Claims Rules of Procedure, CliniComp respectfully applies to this Court for entry of a preliminary injunction enjoining the U.S. Department of Veterans Affairs ("VA") from awarding a sole source contract to Cerner Corporation ("Cerner") for the next generation VA Electronic Health Record ("EHR") system as proclaimed in a VA News Release and press conference by the Secretary of Veterans Affairs on June 5, 2017.

## I.   PRELIMINARY STATEMENT

This is a suit for declaratory and injunctive relief.  CliniComp brings this action to redress acts, findings, and conclusions of the United States that were arbitrary, capricious, an abuse of discretion, and otherwise not is accordance with law or without observance of procedures required by law.  The controversy arises from a VA News Release dated June 5, 2017 stating:  "Today U.S. Secretary of Veterans Affairs Dr. David J. Shulkin announced his decision on the next-generation Electronic Health Record (EHR) system for the Department of Veterans Affairs (VA) at a news briefing at VA headquarters in Washington."  (Exhibit 1.) In particular, Secretary Shulkin announced that the VA will award a sole-source

1

contract to Cerner Corporation ("Cerner") to develop the VA's next generation EHR software. (*Id.*)

On June 14, 2017 CliniComp filed an agency-level protest contesting the VA's decision to award a sole source contract to Cerner. (Exhibit 2.)  In a letter dated August 7, 2017, the VA denied/dismissed the protest. (Exhibit 3.)  As shown by the nine counts set forth below, the VA's decision to award a sole source contract to Cerner for the next generation EHR cannot withstand scrutiny and is arbitrary, capricious, an abuse of discretion as well as violates law and regulations.

## II.    QUESTIONS PRESENTED

1.    Whether Secretary Shulkin's decision to use the public interest exception to the full and open competition requirement of the Competition in Contracting Act ("CICA") lacks a rational basis.

2.    Whether the public interest exception is unavailable because the purported urgency compelling Secretary Shulkin's decision is a consequence of the VA's lack of advance planning.

3.    Whether the sole source decision fails scrutiny because the VA has an obligation under 41 U.S.C. § 3304(d) to solicit offers from as many potential sources as is practicable under the circumstance, and, under the present circumstances, not only is CliniComp a potential source, the selection of Cerner

was arbitrary, capricious and an abuse of discretion because CliniComp already has an EHR system that meets the VA's requirements and Cerner does not.

4.     Whether proceeding as planned with a development contract to Cerner violates 41 U.S.C. § 3307(b), which requires, to the maximum extent practicable, providing offerors of commercial and nondevelopmental items (such as CliniComp) an opportunity to compete in any procurement to fill those requirements.

5.     Whether the VA has violated FAR § 10.002(b) by failing to conduct market research "to determine if commercial items or noncommercial items are available to meet the government's needs or could be modified to meet the government's needs."

6.     Whether Secretary Shulkin's decision to award a sole source contract to Cerner constitutes a source selection decision that fails to consider costs and violates the duty imposed by FAR § 1.102-2(c)(1) to be "responsible and accountable for the wise use of public resources."

7.     Whether the VA's decision to standardize on Cerner's EHR without first holding a competition violates CICA.

8.     Whether the VA is violating FAR § 34.005-1 by not pursuing full and open competition between alternative major systems sources until it is no longer

economical or practical to do so, given that the next generation VA EHR is a major system.

9.    Whether the VA's decision to modernize the existing EHR and/or develop a new EHR without considering the commercially available option of CliniComp's EHR is arbitrary, capricious, an abuse of discretion, and violates OMB Circular A-130.

10.    Whether this Court should grant injunctive and declaratory relief enjoining the VA from awarding a sole contract to Cerner based upon the foregoing reasons.

## III.   STATEMENT OF THE CASE

The procedural history of the case is as follows:  On June 5, 2015, Secretary Shulkin announced, via News Release, that the VA has decided to award a sole source contract to Cerner to develop its next generation EHR software.  (Exhibits 1.)  On June 14, 2017, CliniComp timely submitted an agency-level protest of Secretary Shulkin's decision.  (Exhibit 2.)  On August 7, 2017, the VA issued a decision denying CliniComp's agency-level protest.  (Exhibit 3.)    Therefore, CliniComp timely filed its complaint with this Court.

The Competition in Contract Act generally mandates that federal procurements be conducted with "full and open competition."  10 U.S.C.  § 2304 (a)(1)(A).  In an effort to avoid the "full and open competition" requirement,

4

Secretary Shulkin asserts that there is great urgency for the VA to have an EHR system that is interoperable with the Department of Defense ("DOD"). Accordingly, Secretary Shulkin has signed a Justification authorizing a sole source award to Cerner.[1]   Yet, in his press conference concerning the News Release, Secretary Shulkin explained that it would take between three to six months to award the contract to Cerner.  ("We expect that process – again, trying to do this as quickly as possible – will be about three to six months at the latest.")  (Exhibit 4, p. 4.)  Thus, Secretary Shulkin's reliance on the public interest exception to CICA lacks a rational basis since there is sufficient time within the VA's projected schedule to hold an accelerated full and open competition.  Moreover, despite the VA's newfound urgency, the VA acknowledges that the EHR interoperability issue has existed "for at least 17 years — from all the way back in 2000 ...."  (Exhibit 1.)

---

[1] Congress intended the Justification to be a public document.  See FAR § 6.305. The VA did not post the Justification on a public web site.  Commencing on June 8, 2017, CliniComp requested a copy the Justification but the VA repeatedly refused to provide the document.  A Freedom of Information Act ("FOIA") request was sent on July 19, 2017 but it was not until August 8, 2017 that the VA has assigned a processing number to the request.  The June 14, 2017 agency-level protest to the VA Deputy Assistant Secretary for Acquisition and Logistics expressly asked for the Justification.    Notwithstanding that the VA Deputy Assistant Secretary relied on the Justification to deny the protest, the VA Deputy Assistant Secretary's letter states "the request for the D&F is denied."  (Exhibit 3.)  However, after CliniComp issued its pre-filing notice of this bid protest, a copy of the D&F was provided by Department of Justice counsel at 1:36 p.m. on Friday, August 18, 2017.  (Exhibit 9.)  Although CliniComp has not yet had an opportunity to thoroughly analyze the D&F, CliniComp is providing the attached copy at Exhibit 9 for the sake of the record.

Secretary Shulkin seeks to justify the lack of full and open competition based on Exception # 7 of CICA – Public Interest.  However, the use of Exception # 7 is forbidden where the underlying basis is ""the lack of advance planning."  41 U.S.C. § 3304(e)(5).  Here, the VA's June 5, 2017 News Release, on its face, reveals overwhelming evidence that the predicament Secretary Shulkin seeks to remedy with a sole source contract was brought about by the VA's lack of advance planning.

Secretary Shulkin's decision also violates 41 U.S.C. § 3304(d), which obligates the VA to solicit offers from as many potential sources as is practicable under the circumstances.  Under the present circumstances, not only is CliniComp a potential source, the selection of Cerner was arbitrary, capricious and an abuse of discretion since CliniComp already has an EHR that meets the VA's requirement and Cerner does not.

Moreover, the VA has violated FAR § 10.002(b) by failing to conduct market research "to determine if commercial items or noncommercial items are available to meet the Government's needs or could be modified to meet the Government's needs."   Additionally, Secretary Shulkin's decision to award a sole source contract to Cerner constituted a source selection decision that fails to consider costs.  Not only does Secretary Shulkin's failure to consider costs violate a fundamental procurement precept for source selection decisions by also violated

6

his duty to be "responsible and accountable for the wise use of public resources as well as acting in a manner which maintains the public's trust."   FAR § 1.102-2(c)(1).

## IV.   FACTUAL BACKGROUND

CliniComp is a privately-held corporation that develops Electronic Health Record ("EHR") solutions  for hospitals, integrated delivery networks, academic medical centers, and other acute care providers.  CliniComp's EHR system was originally built to meet the clinical workflow challenges of the most demanding critical care environments.  In fact, CliniComp pioneered the integration of computer-based clinical documentation and medical device integration almost three decades ago.

CliniComp has 30 years of EHR management experience and innovation, and virtually zero downtime since 1983.  Today, CliniComp's EHR is deployed enterprise-wide in leading private, military, and Veterans health care facilities and supports safer and more efficient patient care.

In 2009, CliniComp was selected by the DOD to be the inpatient clinical documentation provider for the Military Health System. A pioneer in the clinical computing field, CliniComp enjoys distinction as a world-class innovator and a trusted partner.  CliniComp is currently providing its EHR system at 61 DOD sites, comprised of 56 Military Treatment Facilities.  Since 2009, CliniComp has been

7

selected by 8 VA regional Veterans Integrated Service Networks (VISNs) to provide EHR at more than 40 VA health care facilities.

The following are extracts from the Secretary Shulkin's announcement in the VA News Release dated June 5, 2017:

- "Today U.S. Secretary of Veterans Affairs Dr. David J. Shulkin announced his decision on the next-generation Electronic Health Record (EHR) system for the Department of Veterans Affairs (VA) at a news briefing at VA headquarters in Washington."

- "Without improved and consistently implemented national interoperability standards, VA and DoD will continue to face significant challenges if the Departments remain on two different systems.   For these reasons, I have decided that VA will adopt the same EHR system as DoD, now known as MHS GENESIS, which at its core consists of Cerner Millennium."

- "It's time to move forward, and as Secretary I was not willing to put this decision off any longer.   When DoD went through this acquisition process in 2014 it took far too long.   The entire EHR acquisition process, starting from requirements generation until contract award, took approximately 26 months.   We simply can't afford to wait that long when it comes to the health of our Veterans.   Because of the **urgency** and the critical nature of this decision, I have decided that there is a public interest exception to the requirement for full and open competition in this technology acquisition."

- "Accordingly, under my authority as Secretary of Veterans Affairs, I have signed what is known as a "Determination and Findings," or D&F, that is a special form of written approval by an authorized official that is required by statute or regulation as a prerequisite to taking certain contract actions.   The D&F notes that there is a public interest exception to the requirement for full and open competition, and determines that the VA may issue a solicitation directly to Cerner Corporation for the acquisition of the EHR system currently being deployed by DoD, for deployment and transition across the VA enterprise in a manner that

meets VA needs, and which will enable seamless healthcare to Veterans and qualified beneficiaries."

(Exhibit 1, emphasis added).

On June 14, 2017, CliniComp filed an agency-level protest contesting Secretary Shulkin's decision to make a sole source award of a contract to Cerner. (Exhibit 2.)  In a letter dated August 7, 2017, the VA Deputy Assistant Secretary for Acquisition and Logistics denied/dismissed the protest.  (Exhibit 3.)

## V.    STANDARD OF REVIEW, AUTHORITY, AND RELIEF REQUESTED

### A.    Jurisdiction, Ripeness, and Standing.

This Court has jurisdiction and venue over this action pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 12(a), (b), 110 Stat. 3870, codified at 28 U.S.C. § 1491(b)(2008). The Court has jurisdiction over "an action by an interested party objecting ... to an alleged violation of a statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(l) (2008).

This matter is also ripe for review.  In *Savantage Financial Services v. United States*, 123 Fed. Cl. 7 (2014), this Court addressed ripeness in the context of an agency making a decision to standardize on a software package to the exclusion of an incumbent software provider.  The decision identifies a two-part test for ripeness:

9

In determining whether a claim is ripe for judicial review, courts must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S. Ct. 1507. The first prong of the ripeness analysis is not satisfied unless "the challenged agency action is final." *Tokyo Kikai Seisakusho, Ltd. v. United States,* 529 F.3d 1352, 1362 (Fed.Cir.2008); *accord NSK, Ltd. v. United States,* 510 F.3d 1375, 1384 (Fed. Cir. 2007) (citing *28 *Abbott Labs.,* 387 U.S. at 149, 87 S. Ct. 1507). A final agency action displays two characteristics. "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (citation omitted). "[S]econd, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Id.* at 178, 117 S. Ct. 1154 (citation omitted). The second prong of the ripeness analysis is satisfied when the challenged agency action has an "immediate and substantial impact" on the plaintiff. *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 170, 87 S. Ct. 1526, 18 L.Ed. 2d 704 (1967); *see also Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012) ("Unlike the standard for obtaining injunctive relief, which requires a showing of irreparable harm, the standard for ripeness requires a lesser showing of hardship.").

*Id.* at 27-28.

To summarize, the two part test for ripeness is:  the challenged agency action is (1) final and (2) has an immediate and substantial impact on the plaintiff. The plaintiff in *Savantage* argued that its claims were ripe when the agency made a decision "to limit competition in a way that excludes plaintiff."  *Id.* at 28. Regarding the first part of the ripeness test, the Court stated that when an agency "rejects the option of acquiring such a system and related services through a competitive process, it is making a final decision to forgo competition." *Id.* at 28.

10

The Court also found that the second part of the test was satisfied, stating that "such a decision has an immediate, substantial impact on plaintiff because plaintiff is precluded from the opportunity to compete for, and being awarded, a potentially lucrative government contract." *Id.*

In this case, the first part of the ripeness test is satisfied because the public declaration by the VA Secretary followed by his signing a FAR § 6.303 Justification represents the final "consummation of the agency's decisionmaking process." As to the second part, as in *Savantage*, the VA's sole source decision precludes CliniComp from the opportunity to compete for, and being awarded, a potentially lucrative government contract. Moreover, a sole source award will result in Cerner obtaining "organizational lock-in" for VA EHRs, thus causing CliniComp the probable loss of significant venue, profit, work, employees, and the opportunity to be competitive in similar EHR procurements. Having met the two-part test, CliniComp's protest is ripe for adjudication.

CliniComp also has standing to file this action because it is a current provider of EHR systems to the VA and would be prejudiced by the award of a sole source contract to Cerner. CliniComp is an "interested party" pursuant to 28 U.S.C. § 1491(b)(1) because CliniComp's EHR is a commercially available product that is either currently capable of meeting the VA's requirements or would be able to meet the VA requirements with minor modifications.

11

In *Savantage*, 123 Fed. Cl. at 32, this Court held that a "prospective offeror with a direct economic interest in the procurement" had standing to challenge a decision not to conduct a competitive procurement. As in *Savantage*, CliniComp is a prospective offeror with a direct economic interest in the procurement and therefore has standing to challenge the VA's sole source decision.

## B.   Legal Standard Under the Administrative Procedure Act.

The Administrative Procedure Act ("APA") provides the appropriate standard of review for bid protest cases. Specifically, the APA provides:

> The reviewing court shall ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ....

5 U.S.C. § 706(2).

This Court has further refined the APA analysis by establishing the following factors to be considered when determining whether the Government has acted arbitrarily or capriciously toward a claimant:

> 1.   Whether there was subjective bad faith on the part of the procuring officials, thus depriving the bidder of fair and honest consideration of its proposal;

> 2.   Whether there was a reasonable basis for the Government's decision;

> 3.   The degree of discretion given to the procurement officials by applicable statutes and regulations, which determines the degree of proof of error necessary to demonstrate a right to recovery; and,

12

4.   Whether Government officials violated pertinent statutes or regulations, which, if violated, may form the basis for recovery, but which need not automatically constitute grounds for such recovery.

*Keco Industries, Inc. v. United States*, 492 F.2d 1200 (Ct. Cl. 1974).

When this Court reviews agency action under the APA, it must perform a "thorough, probing in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 318-19 (1998) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 415-16, 91 S. Ct. 814 (1971)).   While deferential, the arbitrary and capricious standard "is not a rubber stamp."   *Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 742 (2000).   It does not require the Court "to accept, in a Kierkegaardian leap of faith, bald assertions on a critical point that are not otherwise tied to the administrative record and that are at least in tension with, if not contradicted by, various aspects of that record." *Id.*

To the contrary, the Supreme Court has stated that, under the arbitrary and capricious standard, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).   Thus, only by "carefully reviewing the record and satisfying [itself] that the [Agency] has made a reasoned

13

decision" can a court ensure that agency decisions are "founded on a reasoned evaluation of the relevant factors." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989); *Overstreet*, 47 Fed. Cl. at 742.

### C.     Legal Standard for Injunctive Relief.

The Court of Federal Claims will grant injunctive relief when the plaintiff establishes that the following elements weigh in its favor:

> 1.     Whether there is a reasonable likelihood that the plaintiff will prevail on the merits;
>
> 2.     Whether injunctive relief will not be contrary to the public interest;
>
> 3.     Whether the plaintiff will suffer irreparable harm if preliminary relief is not granted, and cannot obtain adequate relief at law if the injunction is not granted; and
>
> 4.     That the balance of hardships on plaintiff and defendant tips in the movant's favor.

*IMS Services, Inc. v. United States*, 33 Fed. Cl. 167, 178 (1995); *Eskridge Research Corporation v. United States*, 92 Fed. Cl. 88, 97 (2010).

No one factor in isolation is necessarily dispositive. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Eskridge,* 92 Fed. Cl. at 96.  When a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.   *Id.* Moreover, a plaintiff need not establish entitlement to preliminary injunctive relief by clear and convincing evidence; rather, proof of a strong likelihood of success on

the merits is all that is required. *Isratex, Inc. v. United States*, 25 Cl. Ct. 223, 227 (1992).

If harm to the injunction applicant is sufficiently serious, it is only necessary that there be a "fair chance of success on the merits." *Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 512-13 (Fed. Cir. 1990). "A request for a preliminary injunction is evaluated in accordance with a 'sliding scale' approach: the more the balance of irreparable harm inclines in the plaintiffs favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." *Qingdal Taifa Group Co. v. United States*, 581 F.3d 1375, 1378-9 (Fed. Cir. 2009)(quoting *Kowalski v. Chicago Tribune Co.*, 854 F.2d 168, 170 (7th Cir. 1988).

As established in this memorandum, CliniComp has satisfied its burden of proof with respect to all four elements of injunctive relief.

### D.     Authority and Argument.

### 1.     CliniComp Meets the Prejudice Requirement for Issuance of an Injunction.

In CliniComp's case, the prejudice is apparent and obvious. CliniComp is a leading supplier of EHRs to the VA. Without injunctive relief, CliniComp will be deprived of the opportunity to compete for and potentially be awarded a lucrative government contract. *Savantage*, 123 Fed. Cl. at 28 (2015). Moreover, CliniComp's competitor, Cerner, will achieve "organizational lock-in" for VA

EHRs, thus causing CliniComp irreparable harm.  Without relief from the Court, CliniComp will be prejudiced by the loss of significant revenues, lost profit, lost work, the possible loss of employees, and the loss of opportunity to remain involved for this and other similar procurements for EHR systems.

### 2.   CliniComp is Highly Likely to Prevail on the Merits.

CliniComp's protest is conceptually analogous to the protest in *Savantage Financial Services, Inc. v. United States*, 81 Fed. Cl. 300 (2008), notwithstanding that *Savantage Federal* involves CICA Exception #1.  In that case, the Court held that the Department of Homeland Security's ("DHS") decision to use the financial management software systems of two incumbent contractors by requiring migration to a specific brand name was held to be an improper sole source procurement in violation of CICA.  DHS, having been created in 2003 by a merger of 22 separate federal agencies, sought to integrate and consolidate its financial systems application software by migrating all the components to a shared software baseline.  DHS selected two particular systems.

DHS did not conduct any competition for the selection of the two financial management software systems and did not publicize any justification or supporting documentation.  DHS later issued a solicitation to manage the migration process to the two selected systems. The plaintiff challenged the solicitation on the ground

that the decision to use the particular systems should have been subjected to a competitive procurement.

At the outset, the Court held that DHS's decision to utilize two particular software programs for standardizing its financial systems software constituted a procurement for purposes of a bid protest under CICA.  *Id.* at 304-05.  The applicable CICA Exception was #1, "the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency." *Id.* at 306-07.

The Court explained that before an agency may initiate a sole source procurement, the agency must justify and authorize its use of noncompetitive procedures.  *Id.* at 307. The plaintiff asserted that there were several other responsible sources, including itself, from which offers for compliant financial management software systems could have been solicited.  *Id.*  The Court held that "DHS cannot merely select certain software systems because it feels they are most cost-effective." *Id.* at 308.  The Court found that DHS should have competitively evaluated the merits of each source that was competent to perform the contract.  *Id.* Because there were additional responsible sources, the Court concluded that DHS's decision to use only two particular financial management systems, without competition, constituted a sole source procurement which violated CICA.  *Id.*

17

Accordingly, the Court granted the plaintiff's motion for summary judgment. *Id.* at 311.

The analogy between *Savantage Financial* and the present facts begins with an agency proceeding with a sole source for vital software (*i.e.*, financial software and medical records software).   In both instances, the agencies excluded other potential suppliers of software without having competitively evaluated the merits of the excluded vendors' software.   The fact the Court sustained the protest in *Savantage* strongly suggests the Court will likewise sustain CliniComp's protest.

To further appreciate the likelihood of CliniComp's protest being sustained on the merits, Counts I through IX are separately addressed below:

> ### *Count I:   Secretary Shulkin's Use of the Public Interest Exception to CICA Lacks a Rational Basis.*

On its face, the Secretary Shulkin's decision lacks a rational basis.   On one hand, Secretary Shulkin contends that there is great urgency for the VA to make a selection regarding its next generation EHR.   Yet, in his press conference, Secretary Shulkin acknowledged that "Congress has been urging the VA and DoD for at least **17 years — from all the way back in 2000** — to work more closely on EHR issues."   (Exhibit 1, emphasis added.)   Moreover, even under the most optimistic circumstances, Secretary Shulkin acknowledges it will take between "three to six months" to award the contract to Cerner.   (Exhibit 4, p. 4.)

The Acting VA Under Secretary testified to a House VA Subcommittee on June 22, 2017 that the next generation HHR was "going to be a multiyear, you know, five to 10-year project at this point." (Exhibit 8.) As a practical matter, six months to perform a full and open competition is *de minimus* in the context of a "five to 10-year program." *Id.* This is especially true when one considers the advantaged gain if the acquisition strategy included the risk reduction discussed in Count VIII, *infra.*

Thus, Secretary Shulkin's use of the public interest exception to CICA lacks a rational basis since there is sufficient time within the VA's projected schedule to hold an accelerated full and open competition.

> **_Count II_: _The CICA Exception to Full and Open Competition for Public Interest is Not Available Because the Urgency That Is Compelling Secretary Shulkin to Award a Sole Source Contract to Cerner Is a Consequence of the VA's Lack of Advance Planning._**

The decision of the Court of Federal Claims in *Cherokee Nation Technologies, LLC v. United States*, 116 Fed. Cl. 636 (2014) is insightful to CliniComp's protest. The following is an extract from the decision:

> In this case, defendant all but admits that the BIA failed to plan adequately for the transition of the procurement here and, in particular, for the use of the sole-source contract in question. The decisional law strongly suggests that this was an inappropriate use of the sole-source regulations. [Citations omitted]   While the court understands that the planning in this regard cannot be perfect or even error-free, *see Infrastructure Def. Techs. v. United States*, 81 Fed.Cl. 375, 398 (2008), it is obvious here that the agency failed to perform any real advanced planning, beyond having the prior contract awardee

perform the work and invoking the sole-source procurement rules in Chenega's favor. *See Reilly's Wholesale Produce*, 73 Fed. Cl. at 715. Waiting until the last minute does not absolve the BIA of its obligations in this regard—a different view would turn the sole-source rules on their head. Accordingly, the court believes that plaintiff has demonstrated a likelihood of success on the merits.

*Id.* at 640.

Just as in *Cherokee Nation Technologies*, where the agency all but admitted a lack of advance planning, so too, as shown in his News Release, Secretary Shulkin "all but admits" a lack of advance planning over "at least 17 years — from all the way back in 2000 ...." (Exhibit 1.) In *Cherokee Nation Technologies* the Court commented that "a different view would turn the sole source rules on their head." So too, it would turn the sole source rules on their head if the VA were allowed to use the Public Interest Exception to circumvent the prohibition of 41 U.S.C. § 3304(e)(5) of allowing a sole source contract where the underlying cause is "the lack of advance planning."

> ***Count III:*** *The Sole Source Decision Cannot Withstand Scrutiny Because the VA Has an Obligation Under 41 U.S.C. § 3304(d) to Solicit Offers From as Many Potential Sources as is Practicable Under The Circumstances. Under the Present Circumstances, Not Only is CliniComp a Potential Source But Also the Selection of Cerner Was Arbitrary, Capricious and an Abuse of Discretion Since CliniComp Already Has an EHR System That Meets the VA's Requirements and Cerner Does Not.*

Under CICA, there are seven exceptions when "an executive agency may use procedures other than competitive procedures." 41 U.S.C. § 3304(a). The

statute begins with very specific exceptions (*e.g.*, the first exception is only one source; the second exception is for unusual and compelling urgency). The last of the seven exceptions is a catchall – public interest.

According to the U.S. Supreme Court, "[I]t is a commonplace of statutory construction that the specific governs the general." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017). Applying this rule, the specific CICA exceptions govern the general catchall CICA exception of public interest. Explained in greater detail, under the Latin name of *ejusdem generis*, this rule of statutory construction "limits general terms [that] follow specific ones to matters similar to those specified." *CSX Transp. Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 294 (2011). As described in *CSX Transport Inc.*, the purpose of the rule is to prevent general provisions from swallowing specific ones:

> We typically use *ejusdem generis* to ensure that a general word will not render specific words **meaningless**. *E.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–115, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001); *see* 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 47:17 (7th ed. 2007).

*Id.* (Emphasis added.)[2]

Here, Secretary Shulkin's attempted use of the catchall of public interest would render the specific exception of unusual and compelling urgency

---

[2] The FAR Councils recognized the need to apply the rule that specific CICA exemptions should control over the last, catchall CICA exception of public interest. See FAR 6.302-1(b) which states that only one responsible CICA exception "shall be used, if appropriate, in preference to the" public interest CICA exception.

meaningless.  Such an interpretation of CICA cannot withstand legal scrutiny.
Thus, the only applicable authority for the VA to award a sole source contract to
Cerner is CICA Exception #2, unusual and compelling urgency.  Yet, despite
asserting urgency as the basis for the decision, the VA admits in response to
CliniComp's protest that it did not utilize the unusual and compelling urgency
exception (nor could it, for the reasons explained below).  (Exhibit 3.)

 41 U.S.C. § 3304(d) states:  "An executive agency using procedures other
than competitive procedures to procure property or services by reason of the
application of [the unusual and compelling urgency exception] … **shall request
offers from as many potential sources as is practicable under the
circumstances.**"  (Emphasis added.)  Pursuant to 41 U.S.C. § 3304(d), because the
only authority on which the VA could proceed with a sole source procurement of
EHRs based on perceived urgency is CICA Exception #2, the VA is obligated to
"request offers from as many potential sources as is practicable under the
circumstances."

 Consistent with 41 U.S.C. § 3304(d), it is practicable under the
circumstances for the VA to request an offer from CliniComp.  CliniComp already
has an EHR system that meets the VA's requirements, and Cerner does not.
Accordingly, it is highly probable that the Court will that the VA's failure to
request an offer from CliniComp violates 41 U.S.C. § 3304(d).

***Count IV***:  ***By Proceeding as Planned With a Development Contract
to Be Awarded to Cerner, the VA is Violating 41 U.S.C. § 3307(b)
Which Requires, to the Maximum Extent Practicable, "Offerors Of
Commercial Items and Nondevelopmental Items ... Are Provided An
Opportunity to Compete in Any Procurement to Fill Those
Requirements."***

41 U.S.C. § 3307 is entitled "Preference for Commercial Items."  Subsection

(b) states, "to the maximum extent practicable," agencies shall ensure that

"offerors of commercial items and nondevelopmental items other than commercial

items are provided an opportunity to compete in any procurement to fill those

requirements."  CliniComp's EHR system is a commercial item that can fulfill the

VA's requirement for an EHR system that is interoperable with the DOD's EHR

system.  Alternatively, CliniComp's EHR system is a nondevelopmental item that

can fulfill the VA's requirement for an EHR system that is interoperable with the

DOD's EHR system.  Thus, 41 U.S. § 3307(b) requires that CliniComp be afforded

the opportunity to compete in the procurement to the maximum extent practicable.

Here, however, the VA has not given CliniComp any opportunity to compete and,

instead, inexplicably, seeks to award a sole source contract to Cerner for a

development contract.  Under these circumstances, it is highly probable that the

Court will find that the VA's decision to award a development contract to Cerner

violates 41 U.S.C. § 3307(b).

***Count V***:  ***The VA Has Violated FAR § 10.002(b) By Failing To
Conduct Market Research "to Determine if Commercial Items or***

*Noncommercial Items Are Available to Meet the Government's Needs or Could Be Modified to Meet the Government's Needs."*

FAR § 10.002(b) states: "Market research is then conducted to determine if commercial items or nondevelopmental items are available to meet the Government's needs or could be modified to meet the Government's needs." The VA has not conducted market research for its next generation EHR system to ascertain if commercial items or nondevelopmental items are available to meet the VA's needs or could be modified to meet the VA's needs.

If the VA had complied with its duty under FAR § 10.002(b) to perform market research, the VA would have inevitably found that CliniComp offers an EHR that is ready and available to meet the VA's requirement for interoperability with the DOD. The VA has violated FAR § 10.002(b) by failing to conduct the necessary market research to ascertain if commercial items or nondevelopmental items, such as those offered by CliniComp, are available to meet the VA's needs or could be modified to meet the VA's needs.

In *TeQcom, Inc.*, B-224664 (Dec. 22, 1986), the Army issued a sole source award to obtain a telecommunications system that not only transmitted messages but also provided word processing capabilities. The GAO sustained the protest because there was "no justification for effectively restricting the procurement to a single qualified source except lack of advance planning." *Id.* The GAO further

commented that "Agencies must use advance procurement planning and market research to open the procurement process to all capable contractors." *Id.*

Here, as in *TeQcom, Inc.*, because the VA did not "use advance procurement planning and market research to open the procurement process to all capable contractors," it is highly probable the Court will find that the VA's violation of FAR § 10.002(b) is arbitrary, capricious, and an abuse of discretion.

> ***Count VI:** **Secretary Shulkin's Decision to Award a Sole Source Contract to Cerner Constituted a Source Selection Decision. Secretary Shulkin's Source Selection Decision Failed to Consider Cost. Not Only Does Secretary Shulkin's Failure to Consider Costs Violate a Fundamental Procurement Precept for Source Selection Decisions by Also Violated his Duty Under FAR § 1.102-2(c)(1) to be "Responsible and Accountable for the Wise Use of Public Resources."*

In his interview at the June 5, 2017 press conference, Secretary Shulkin stated he had no ballpark estimate of how much a Cerner contract might cost. (Exhibit 4.) In light of the fact that Secretary Shulkin admitted he had no ballpark estimate of how much a Cerner contract might cost, his source selection decision failed to consider costs.

In failing to consider costs, Secretary Shulkin violated a fundamental procurement precept that source selection decisions must give meaningful

consideration to costs.[3]  In *Glotech, Inc.*, B-406761 (Aug. 21, 2012), the agency did not consider price in issuing blanket purchase agreements under a Federal Supply Schedule program involving a maximum of $900 million in orders.  The GAO sustained the protest because the agency selected vendors only on the basis of their technical evaluation scores.

In making the decision to award a sole source contract, Secretary Shulkin had a duty to be "responsible and accountable for the wise use of public resources as well as acting in a manner which maintains the public's trust."  FAR § 1.102-2(c)(1).  By not considering costs in his source selection decision, Secretary Shulkin has violated his FAR § 1.102-2(c)(1) duty.  Furthermore, the overall decision to award a sole source contract was a violation of Secretary Shulkin's duty to maintain the public trust as evidenced in recent article in *The Hill*, titled *Feds' Rampant Use of No-Bid Contracts the Essence of Corruption*.  (Exhibit 5.) The article states:  "The public interest is hardly served when the VA doesn't comparison-shop for a system that will hold millions of veterans' sensitive medical information."  (*Id.*)

---

[3]  *See I.M. Systems Group*, B-404583 (Feb. 25, 2011) ("An evaluation and source selection that fail to give meaningful consideration to cost or price is inconsistent with CICA and cannot serve as a reasonable basis for award."); *RTF/TCI/EAI Joint Venture*, B-280422 (Dec. 29, 1998) ("A source selection which fails to give significant consideration to cost or price is inconsistent with CICA and cannot serve as a reasonable basis for award."); *Electronic Design, Inc.*, B-279662 (Aug. 31, 1998) ("An evaluation and source selection which fails to give significant consideration to cost or price is inconsistent with CICA and can not serve as a reasonable basis for award.").

Another example of Secretary Shulkin's decision undermining public trust can be found in an article in *HealthcareIT News* titled *How Jared Hushner Helped the VA pick Cerner…Quickly.* (Exhibit 6). According to the article:

> Many people in the government and healthcare sectors were surprised at how quickly the VA made its choice and the fact that it did so without the usual request for information and request for proposal procedures that are common in large-scale IT acquisitions.
>
> Now, a leaked audio obtained by Wired of a question and answer session with congressional interns led by presidential senior adviser and President Trump's son-in-law Jared Kushner sheds some light on how the decision was made for the government to go with Cerner.

(*Id.*)

As to the "many people" who "were surprised" that the VA avoided "the usual request for information and request for proposal procedures that are common in large-scale IT acquisitions," in addition to being surprised, their public trust in the procurement process was damaged.

Secretary Shulkin's failure to consider cost when selecting Cerner for the award of a sole source contract is likely to result in the Court sustaining CliniComp's protest.

### Count VII:   The VA's Decision to Standardize on Cerner's EHR System Without First Holding a Competition Violates CICA.

Secretary Shulkin's decision to standardize on the Cerner EHR is evidenced by the VA News Release:  "Having a Veteran's complete and accurate health

record in a single common EHR system is critical to that care, and to improving patient safety." (Exhibit 1.)  The VA has refused to hold a competition before selecting Cerner's EHR system on which to standardize.  The VA decision to standardize on Cerner's EHR system without holding a competition violates CICA.

In *Google, Inc. and Onix Networking Corp. v United States*, 95 Fed. Cl. 661 (2011), the Department of Interior was preliminarily enjoined from proceeding with a procurement for an e-mail messaging system because the agency did not provide proper justification for awarding a contract without full and open competition.  Google, as the protestor, made a *prima facie* showing that the agency's limited source determinations and findings violated CICA and FAR Subpart 6.3.

Google credibly argued that, without injunctive relief, its competitor would achieve "organizational lock-in" for messaging, thus causing Google irreparable harm.  Just as in *Google*, where this Court would not condone the Department of Interior's decision to standardize on a messaging system without a competition, so too it is highly likely that the Court will not condone the VA's decision to standardize on Cerner's EHR system without a competition.

> ### Count VIII:  Since The Next Generation VA EHR System is a Major System, the VA is Violating FAR § 34.005-1 by Not Pursuing Full and Open Competition Between Alternative Major Systems Sources Until it is No Longer Economical or Practical to Do So.

28

According to FAR § 2.101, a civilian agency procurement of a system that exceeds $2 million is a "major system." The next generation EHR is a major system subject to FAR Part 34. FAR § 34.005-1(a) states: "The program manager shall, throughout the acquisition process, promote full and open competition and sustain effective competition between alternative major system concepts and sources, as long as it is economically beneficial and practicable to do so."

It is economically beneficial and practicable for the VA to sustain effective competition between alternative major system sources—Cerner's EHR and CliniComp's EHR. One of the primary benefits would be risk reduction for the program. In this regard, Secretary Shulkin has acknowledged that the project is high risk: "No guarantees. High-risk process, particularly when you're doing this in the largest integrated health system in the country. And so this is high risk." (Exhibit 4, p. 7.)

In light of the VA's blatant failure to comply with FAR § 34.005-1(a), it is highly likely the Court will sustain CliniComp's protest.

### *Count IX:  The VA's Decision to Modernize the Existing EHR and/or Develop a New EHR Without Considering the Commercially Available Option of CliniComp's EHR is Arbitrary, Capricious, an Abuse of Discretion, and Violates OMB Circular A-130*

OMB Circular A-130 is entitled "Managing Information as a Strategic Resource." (Exhibit 7.) OMB Cir. A-130 states:

29

> Decisions to improve, enhance, or modernize existing IT investments or to develop new IT investments are made only after conducting an alternatives analysis that includes both government-provided (internal, interagency, and intra-agency where applicable) and commercially available options, and the option representing the best value to the Government has been selected.

(*Id.* at 5.d(3)(f).)

The VA's decision to acquire a next generation EHR system falls within the OMB Cir. A-130 criteria of "[d]ecisions to improve, enhance, or modernize existing IT investments or to develop new IT investments." In making the decision to acquire the next generation of EHR system from Cerner, the VA had an obligation under OMB Circular A-130 to conduct an alternative analysis of commercially available options.

A commercially available option for the VA's next generation EHR system is to acquire the EHR from CliniComp since CliniComp currently provides EHR systems to the VA and DOD which are already interoperable. The VA violated OMB Circular A-109 in making its decision to acquire the next generation EHR system from Cerner on a sole source basis without conducting an alternative analysis of commercially available options. Based on the above failure of the VA to comply with OMB Circular A-130, it is likely that the Court will sustain this protest.

As shown by the analysis above of CliniComp's Counts I through IX, CliniComp is highly likely to prevail on the merits.

30

### 3.      The Public Interest Favors CliniComp's Position.

The federal acquisition system has been established for the express purpose "to promote competition in the acquisition process."   FAR § 1.102-2(a)(5).   It promotes competition by ensuring that the business of public procurement is conducted "with integrity, fairness, and openness" – "An essential consideration in every aspect of the system is maintaining the public's trust."   FAR § 1.102-2(c). The public's trust in the fairness and integrity of the federal acquisition system is challenged when the procuring officials fail to follow the procurement system's rules.

This trust has been eroded by Secretary Shulkin's decision to award a sole source contract to Cerner.   See Exhibit 5 for an article in *The Hill* titled *Feds' Rampant Use of No-Bid Contracts the Essence of Corruption*.   The article states: "The public interest is hardly served when the VA doesn't comparison-shop for a system that will hold millions of veterans' sensitive medical information."   See also Exhibit 6 for an article in *HealthcareIT News* titled *How Jared Hushner Helped the VA pick Cerner...Quickly*, which observed that many "were surprised" how the decision was made "without the usual request for information and request for proposal procedures that are common in large-scale IT acquisitions."

As the Court did in *Watterson Construction Co. v. United States*, 98 Fed. Cl. 84 (2011) and *Insight Systems Corp. v. United States*, 110 Fed. Cl. 564, 568-69

(2013), this Court should preserve the original purposes and policies of the federal acquisition system and promote the public's trust in the system by granting this request for injunctive relief.

### 4. The Potential for Irreparable Harm to CliniComp is Immense.

The potential for irreparable harm to both CliniComp and to the Government's procurement integrity is clear. CliniComp has been denied the reasonable opportunity to compete fairly to meet the VA's needs for the next generation EHR. Without injunctive relief, CliniComp's competitor, Cerner, will achieve "organizational lock-in" for VA EHRs, thus causing CliniComp irreparable harm.

Without relief from the Court, CliniComp will be prejudiced by the loss of significant revenues, lost profit, lost work, the possible loss of employees, and the loss of opportunity to remain involved for this and other similar EHR procurements. Neither this Court nor any other court can repair this damage or repay this loss. *See Akal Security, Inc. v. United States*, 87 Fed. Cl. 311, 317 (2009).

### 5. The Harm to CliniComp Outweighs Any Harm to the Government or to Third Parties by Granting the Application.

The VA's June 5, 2017 New Release acknowledges that the issue which the VA seeks to remedy has existed "for at least 17 years — from all the way back in 2000 …." (Exhibit 1.) Similarly, Secretary Shulkin explained in his press

conference that it would take between "three to six months to award the contract" to Cerner.  (Exhibit 4, p. 4.)  Given the expedited manner in which the Court resolves protests, it is likely that CliniComp's protest will be resolved before the VA anticipates awarding a contract to Cerner.  If the protest is decided prior to the VA being ready to award the sole source contract, then the harm to the Government is minor, at best.

       **E.**       **Preliminary and Permanent Injunctive Relief Requested.**

CliniComp respectfully requests a preliminary injunction pending a final determination on the merits by this Court and a permanent injunction:

1.  Enjoining the VA, its agents, employees, officers and representatives, and those acting in concert with or participating with any of the foregoing, from awarding a sole source contract to Cerner for the VA's next generation of EHR.

2.  Enjoining the VA from awarding a contract Cerner for the VA's next generation of EHR until the VA has conducted a full and open competition.

## VI. CONCLUSION

For all of the above reasons, CliniComp respectfully requests that this Court grant the requested preliminary and permanent injunctive relief against the United States.

Dated:  August 18, 2017.

Respectfully submitted,

Richard J.R. Raleigh, Jr. (Attorney of Record)
Jerome S. Gabig
Christopher L. Lockwood

Attorneys for Plaintiff
**WILMER & LEE, P.A.**
100 Washington Street, Suite 200
Huntsville, Alabama 35801
Telephone:  (256) 533-0202
Facsimile:   (256) 533-0302
rraleigh@wilmerlee.com
jgabig@wilmerlee.com
clockwood@wilmerlee.com

34

## CERTIFICATE OF SERVICE

A copy of the above and foregoing was sent on the 18th day of August, 2017, via e-mail and by First Class U.S. Mail, postage prepaid, to:

U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW, 8th Floor
Washington, DC 20530
Electronic Mail:    nationalcourts.bidprotest@usdoj.gov

Honorable Jan R. Frye
Deputy Assistant Secretary for Acquisition and Materiel Management
Department of Veterans Affairs
810 Vermont Avenue, NW.,
Washington, DC 20420
Electronic Mail:    jan.frye@va.gov

William Rayel
Senior Trial Counsel
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW, Room 10128
Washington, DC 20530
Electronic Mail:    william.rayel@usdoj.gov

Richard J.R. Raleigh, Jr.